IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **Ricky Dockery,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | C.A. No. 4:18-cv-00966 |
| v. | § | |
| | § | |
| **Texas Department of Criminal Justice,** | § | |
| | § | |
| **Defendant.** | § | (JURY TRIAL DEMANDED) |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW Plaintiff, Ricky Dockery, filing his Second Amended Complaint complaining of Defendant, Texas Department of Criminal Justice, and in support thereof would show as follows:

**I.**

**JURISDICTION, PARTIES AND VENUE**

1. This Court has jurisdiction over the causes of action alleged by Plaintiff pursuant to (i) 42 U.S.C. §1981, (ii) 42 U.S.C. §1983 and (iii) Title VII of the Civil Rights Act of 1964, as amended.

2. Ricky Dockery resides in Palestine, Texas. Plaintiff is an African-American and is protected by 42 U.S.C. §1981, 42 U.S.C. §1983, and Title VII. Plaintiff was at all relevant times an employee within the meaning of the applicable statutes.

3. Texas Department of Criminal Justice operates in Texas. Defendant was at all times Plaintiff's employer within the meaning of the aforementioned applicable statutes.

4. Texas Department of Criminal Justice employed more than fifteen (15) regular employees.

5. The employment practices alleged to be unlawful herein were committed within the Southern District of Texas, Houston Division. Venue is appropriate in this Court.

**VICARIOUS LIABILITY--RESPONDEAT SUPERIOR**

6. Whenever in this complaint it is alleged that the Defendant Texas Department of Criminal Justice did any act or thing, it is meant that the Defendant Texas Department of Criminal Justice supervisors, agents, servants, employees or representatives did such act and/or that at that time such act was done, it was done with the full authorization or ratification of the Defendant Texas Department of Criminal Justice or was done in the normal and routine course and scope of employment of Defendant Texas Department of Criminal Justice's supervisors, agents, servants, employees, or representatives.

7. The acts of management were performed while in the employment of Defendant's Texas Department of Criminal Justice, to further Defendant Texas Department of Criminal Justice's business, to accomplish the objective for which said managers were hired, and within the course and scope of that employment or within the authority delegated to said employees.

## II.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff, Ricky Dockery, filed two Charges of Discrimination with the United States Equal Employment Opportunity Commission beginning on or about May 12, 2016. In those Charges, and any amendments and/or attachments thereto, Plaintiff Dockery asserted that

Defendant discriminated against him because of his race and retaliated after making such a complaint of discrimination.

9. Therefore, Plaintiff was forced to file this suit in order to protect his employment rights. Plaintiff has exhausted his administrative remedies and files this suit within the statutory limitations period.

### III.
### FACTUAL BACKGROUND

10. Plaintiff (African-American) remembers fondly the day he received the offer to work for Texas Department of Criminal Justice ("TDCJ"). He truly believed that he was destined to work for TDCJ well into the foreseeable future. That was more than thirty (30) years ago!

11. In or about March of 2014, Plaintiff ended his long-standing employment as Assistant Plant Manager of the Beto-Sign Plant via a resignation. Plaintiff did not go away quietly into retirement. He re-applied and was selected by Plant Manager Garry Mullins' (Anglo) as the Industrial Specialist III in or about December of 2014.

12. The Assistant Plant Manager position, under Manager Mullins, became open again in or about May or June of 2015. The vacant position was officially posted on or about September 9, 2015. Plaintiff interviewed for such on or about October 14, 2015 with Manager Mullins and Regional Manager Jeannette Alford (Anglo). Plaintiff was selected for the managerial position.

13. Upper management failed to honor its management's selection of Plaintiff.

14. Instead the position was re-posted on or about November 4, 2015. The deadline for interested applicants to apply for this position was extended several times. Again, Plaintiff

applied for the position. He was interviewed. Upon information and belief, the other candidates failed to appear for their interview. Plaintiff was again selected for the position. And, once again, TDCJ refused to award him said position.

15. In an Inter-Office Communications dated January 9, 2016, Manager Mullins informed Director of Manufacturing & Logistics Division Bobby Lumpkin (Anglo) and Assistant Director of Texas Correctional Industries Kevin VonRosenburg (Anglo) "My selection for Assistant Plant Manager is Mr. Rick Dockery. His wealth of experience and knowledge of the Beto Sign Plant is impressive…."

16. On February 12, 2016, Manager Mullins emailed Kevin VonRosenburg his selection of Plaintiff for the position.

17. On March 3, 2016, Bobby Lumpkin emailed Terry Carter (Anglo) and Darin Pacher (Anglo) stating that he did not agree with Plaintiff as the selectee for the management position at the Beto Sign Shop.

18. On or about March 8, 2016, Plaintiff received a letter from Human Resources Administrator Terry Tubbs Carter stating:

> *The position of Industrial Specialist VI – Metal Sign Plant Assistant Plant Manager at the Beto I Unit, for which you applied, has been filled.*
>
> *I certainly encourage you to continue seeking advancement with our agency. The Texas Department of Criminal Justice is continually in search of qualified applicants.*

19. Manager Mullins invited Plaintiff to his house one day. Manager Mullins told Plaintiff that he wanted Plaintiff to hear it from him that he was not selected as the assistant manager this last time. He told Plaintiff that he should have been the selectee. Mr. Mullins kept apologizing to Plaintiff.

20. The position was filled by John Graham, Caucasian.

21. On or about March 11, 2016, Plaintiff filed an EEO Complaint internally at TDCJ.

22. He filed a Charge of Discrimination with the EEOC on or about May 14, 2016.

23. Mr. Graham informed Plaintiff that he was aware of Plaintiff's legal claims against TDCJ. Moreover, Mr. Graham admitted that Plaintiff was the "man for this job!"

24. Plaintiff was instructed to train Mr. Graham.

25. Mr. Graham assumed the position in or about July of 2016.

26. Very early on, Mr. Graham said to Plaintiff, among other things, "This should have been your job. You are the most qualified. I know about your lawsuit. They did you wrong." Mr. Graham referenced Plaintiff's "lawsuit" and that Plaintiff was the better person for the job on more than one occasion.

27. Despite Mr. Graham being promoted to the Assistant Manager position, Plaintiff was still asked to perform said management duties for many months thereafter.

28. In or about September of 2017, Mr. Graham wrote Plaintiff up in a contact log accusing him of breaking the protocol on patting down an inmate. It was wholly on true. Mr. Graham has tried to sabotage Plaintiff's performance and good reputation on other occasions.

29. Mr. Graham also treated Plaintiff differently from others and overly-scrutinized Plaintiff's every move at work. To be sure, he would observe other persons laughing, joking and goofing out at work and do nothing. With Plaintiff, he directed Plaintiff to work non-stop or risk an incident.

30. Mr. Graham minimized Plaintiff's role at TDCJ in an effort to humiliate him.

31. Mr. Graham called Plaintiff the "big bad wolf." He said it was his plan to try and "knock [Plaintiff] off first," that he "shot at" Plaintiff, and tried to get Plaintiff to quit. Mr. Graham admitted this on more than one occasion. When Plaintiff asked him to explain, Mr. Graham admitted that putting Plaintiff the contact log was part of his scheme.

32. Plaintiff reported Mr. Graham to several persons in management, to no avail. Plaintiff reported Mr. Graham to Warden Jackson and made it clear that if the maltreatment did not stop that Plaintiff would essentially have no choice but to look at his legal options.

33. In time, Mr. Graham became overwhelmed with the job. He asked Plaintiff to help him get a position at the Coffield Unit.

34. Upon information and belief, Mr. Graham was the subject of other complaints of inappropriate behavior.

35. After Mr. Graham left, Plaintiff applied for the vacant Assistant Manager position again. Susan Moore (Anglo) was selected as the Assistant Manager.

36. The effect of the practices complained of herein have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his race and his opposition to discrimination.

## IV.

## CAUSES OF ACTION

A. **RACE DISCRIMINATION PURSUANT TO 42 U.S.C. §1981, 42 U.S.C. §1983, AND TITLE VII**

37. Plaintiff repeats and re-alleges by reference each and every allegation contained in the paragraphs above and incorporate the same herein as though fully set forth.

38. Defendant, through its agents, supervisors, or employees violated Plaintiff's civil rights in violation of 42 U.S.C. §1981, 42 U.S.C. §1983, and Title VII by intentionally interfering with Plaintiff's work performance, environment, and advancement because of his race.

39. TDCJ and its managers demonstrated a deliberate indifference to Plaintiff's constitutionally protected rights of equal employment opportunities provided for in the applicable statutes.

40. TDCJ and its managers also demonstrated a deliberate indifference to Plaintiff's Fourteenth Amendment rights. TDCJ and its managers outlined above including but not limited to Terry Tubbs Carter, Bobby Lumpkin, Kevin VonRosenburg and Darin Pacher did so under color of state law. Moreover, TDCJ's unconstitutional customs and practices were so persistent and widespread that it became its policy.

41. To be sure, Plaintiff was treated differently from his Anglo peers and TDCJ's normal policies, practices and protocols. The aforementioned is further evidence of TDCJ's discriminatory intent.

42. Defendant, through its agents, supervisors, or employees discriminated against Plaintiff, which led to the loss and impairment in whole or part, of the wages, benefits, privileges, and terms and conditions of Plaintiff's employment.

43. The above-described acts on Defendant's part caused Plaintiff's substantial injury and damage.

**B.    R**ETALIATION **P**URSUANT TO **42 U.S.C. §1981, 42 U.S.C. §1983, And T**ITLE **VII**

44.    Plaintiff repeats and re-alleges the allegations contained in the paragraphs above and incorporate the same by reference as though fully set forth herein.

45.    After complaining to management of racially-motivated maltreatment, Plaintiff was subsequently and repeatedly harangued, ignored, disciplined, denied advancement, and bullied.

46.    As herein alleged, Defendant illegally retaliated against Plaintiff because he opposed discrimination and complained of same. Defendant had no legitimate business reasons for any of such acts. Each act of retaliation is in violation of 42 U.S.C. §1981, 42 U.S.C. §1983, and Title VII's anti-retaliation provision.

47.    As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against him, Plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

48.    The above-described acts on Defendant's part were undertaken in violation of 42 U.S.C. §1981, 42 U.S.C. §1983, and Title VII and proximately caused Plaintiff substantial injuries and damages.

## V.
## JURY DEMAND

49.    Plaintiff request that this action be heard before a jury.

## VI.
## DAMAGES

50.    Defendant's conduct constitutes violations of statutory, constitutional and/or common

law.  Such unlawful conduct seriously affects Plaintiff in his occupation, trade and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will continue to suffer humiliation, mental anxiety and stress, and other damages.  Plaintiff has suffered direct injury as a proximate result of the unlawful discriminatory practices, policies, and procedures of Defendant.  Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages in an amount to be proved at trial.

51. Because of Defendant's unlawful and tortious conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent him in these causes of action Plaintiff has agreed to pay his attorney reasonable attorney's fees for the preparation and trial of these causes, and further for any appeal thereof should same become necessary.

52. Additionally, Plaintiff has incurred out-of-pocket expenses, which include litigation costs and other expenses to preserve their ability to earn a living.  Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages as shall be proven at trial.

53. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant.  Plaintiff also seeks post-judgment interest at the maximum rate allowed by law in the event that Defendant do not promptly tender damages assessed against it and to avoid unjustly enriching Defendant.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendant for:

Case 4:18-cv-00966   Document 20   Filed on 09/10/18 in TXSD   Page 10 of 11

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant from engaging in any employment practice which discriminates on the basis of race and in retaliation for opposing same.

b. All damages to which Plaintiff may be entitled pursuant to this Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement or front pay in lieu of reinstatement, loss of earnings in the past, loss of earning capacity in the future, loss of benefits in the past, loss of benefits in the future, statutory relief at law, and equity;

c. Compensatory damages for pain and mental suffering in the past and future;

d. Reasonable attorney's fees, with conditional awards in the event of appeal;

e. Pre-judgment interest at the highest rate permitted by law;

f. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g. Costs of court and expert witness fees incurred by Plaintiff in the preparation and prosecution of this action; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Complaint or by any amendment hereto.

Respectfully submitted,
Law Offices of Katrina Patrick

*/s/ Katrina Patrick*

---

**Katrina Patrick**
Attorney-in-Charge
State Bar No. 00797218
Federal Bar No. 22038
6575 West Loop South, Suite 500
Bellaire, Texas 77401
Telephone: (713) 796-8218

**ATTORNEY FOR PLAINTIFF**
Ricky Dockery

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2018 this instrument was filed pursuant to the electronic filing protocols applicable in the United States District Court for the Southern District of Texas, Houston Division, and that service will be further made in compliance with said protocols.

*/s/ Katrina Patrick*