United States District Court
Southern District of Texas

**ENTERED**

May 18, 2020

David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| RICKY DOCKERY, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:18-CV-0966 |
| | § | |
| TEXAS DEPARTMENT OF CRIMINAL | § | |
| JUSTICE, | § | |
| *Defendant.* | § | |

## MEMORANDUM AND RECOMMENDATION

This employment discrimination case is before the Court on Defendants' Motion for Summary Judgment. Dkt. 45. Having considered the parties submissions and the law, the Court recommends that the motion be GRANTED in part and DENIED in part and that this case proceed to trial on the remaining claims.[1]

## I.     Background

The following facts are undisputed unless otherwise noted. Plaintiff Rickey Dockery, an African-American male, began working for the Texas Department of Criminal Justice in 1985 as a correctional officer. After about seven years he was promoted to the position of Industrial Specialist II in the Beto Metal Sign Shop (Beto). The Beto factory is one of seven TDCJ factories within its Metal Division, a subsection of its Manufacturing, Agribusiness and Logistics (MAL) Division. The Beto factory primarily makes highway

---

[1] Defendant filed Objections to Plaintiff's Response to Defendant's Motion for Summary Judgment (Dkt. 54). Defendant's objection that Dockery has asserted a previously unpled retaliation claim in his summary judgment response is addressed *infra* at p.12 and is overruled. Resolution of Defendant's evidentiary objections is not necessary because the Court does not rely on the statements from Dockery's Affidavit to which Defendant objects.

signs, using inmate labor, and sells the signs to the Texas Department of Transportation. Dockery was promoted to Assistant Plant Manager of the Beto Metal Sign Shop in 2012.

Bobby Lumpkin became division director of MAL in 2013. Although Lumpkin had been with TDCJ for 29 years, this was his first job within the MAL division. Lumpkin and Dockery met when Lumpkin visited Beto in 2013, but they never worked in the same locale and Lumpkin did not directly supervise Dockery. In March 2014, Dockery retired from his position as Assistant Plant Manager (Industrial Specialist V) at Beto. He was succeeded in the position by Tim Swenson.

Dockery came out of retirement in December 2014 and returned to Beto as an Industrial Specialist III at Beto. At that time, Dockery was hired by the Plant Manager, Garry Mullins, whom he had previously worked under as Assistant Plant Manager. Dockery does not dispute that he was ineligible to be rehired as Assistant Plant Manager in December 2014 because a written TDCJ policy, PD-84, prohibits a retiree from returning to his former position for at least one year from the date of retirement.

In June 2015, more than a year after Dockery's March 2104 retirement, the Assistant Plant Manager position became available. Dockery and one other applicant applied for the position. Dockery was interviewed by Garry Mullins, Regional Manager/Program Supervisor V, Jeannette Alford, and Assistant Warden Stuart Calhoun, all of whom certified that they had received training regarding TDCJ hiring policies as required by TDCJ policy, PD-71. The interviewers all selected Dockery for the promotion. However, instead of promoting Dockery, TDCJ canceled the position posting. TDCJ contends the position was canceled because it was in the process of reclassifying the position from

Industrial Specialist V to Industrial Specialist VI.  Dockery alleges he was told that a TDCJ manager, Kevin VonRosenberg, wanted at least five applicants before making a selection.

The position was reposted in November 2015 and Dockery and four others applied. This time he was interviewed by Mullins, Alford, and Assistant Warden Jimmy Bowman. The interviewers again selected Dockery.   In January 2016, Mullins wrote a letter to Lumpkin, VonRosenberg, Deputy Director Darin Pacher, and Human Resources Director Terry Carter, explaining why Dockery was the most qualified candidate for the Assistant Manager position and should be promoted.  Sometime after sending the letter, Mullins traveled to Huntsville to meet with Lumpkin about Dockery's promotion.  Ultimately, Lumpkin rejected Dockery's selection, and VonRosenberg certified "no selection made" for the posted position.

On March 8, 2016, Mullins filed an internal complaint with TDCJ asserting the failure to promote Dockery was an act of racial discrimination.  Also on March 8, 2016, Dockery was informed by letter that the position of Assistant Plant Manager at Beto had been filled, when in fact it remained vacant.  A few days later, Dockery filed an internal claim of racial discrimination based on TDCJ's failure to promote him to Assistant Plant Manager, naming Lumpkin and VonRosenberg as the discriminating parties. Dockery's formal EEOC complaint followed on May 14, 2016.

In April 2016, TDCJ again posted the Assistant Plant Manager position, which had remained vacant since June 2015.  Dockery contends that he performed many of the duties of Assistant Plant Manager, without the accompanying pay and benefits, during the period when the position was unfilled.  Dockery again applied and interviewed for the position

along with 5 other applicants.  This time, the interview panel consisted of four individuals. VonRosenberg, who had been named in Dockery's EEOC complaint, was one of the interviewers.  Jon Graham, a Caucasian male, was selected by the panel for the Assistant Plant Manager position and approved by Lumpkin.  Dockery contends Graham was inexperienced and relied on Dockery to train him for the position.

Dockery applied and was interviewed for the Beto Assistant Plant Manager position one more time in May 2018 after Graham resigned.  The interviewers were Martin Bellone, who succeeded Mullins as Plant Manager, and Alford.  They selected Laura Moore, a Caucasian female, for the position.  Lumpkin approved the selection and Moore became Assistant Plant Manager in July 2018.  Dockery remains employed at the Beto factory as a Technical Supervisor III.[2]

In addition to his failure to promote racial discrimination claim, Dockery asserts retaliation claims, alleging that Graham knew about his EEOC complaint and treated him unfairly because of it, and that the post-EEO filing promotion decisions were retaliatiory.

## II.    Legal Standards

### A.    Summary Judgment Standards

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial.  *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991

---

[2] TDCJ represents that this position is classified for pay purposes as an Industrial Specialist VI, which is the same classification as the Assistant Plant Manager position.  Dtk. 45 at 11, n.1.

(5th Cir. 2001).  Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party.  *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).  "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 310 (5th Cir. 2002).  The court construes the evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor.  *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

## B.     *McDonnell Douglas* Burden-Shifting

Dockery asserts causes of action for discrimination and retaliation under Title VII and 42 U.S.C. § 1981.[3]  All his claims are subject to the familiar *McDonnell Douglas* burden-shifting framework.  *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 316–17 (5th Cir. 2004); *see also Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) ("the inquiry into intentional discrimination is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII.").  Pursuant to the *McDonnell Douglas* framework, a plaintiff relying on circumstantial evidence of discrimination or retaliation must first demonstrate a prima facie case.  *Davis*, 383 F.3d at 317 (citing *Patel v. Midland Mem'l Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002)).  If a plaintiff meets this prima facie burden, a presumption of discrimination or retaliation arises, shifting the burden of production to the employer to articulate a

---

[3] Dockery's Amended Complaint references a 42 U.S.C. § 1983 claim for violation of his Fourteenth Amendment rights.  TDCJ moved to dismiss any § 1983 claim as barred by the Eleventh Amendment. Dkt. 45 at 34.  Dockery does not address his 42 U.S.C. § 1983 claim or the Eleventh Amendment in his summary judgment response. *See* Dkt. 50.  The Court concludes Dockery has abandoned any such claim and recommends it be dismissed.

legitimate, nondiscriminatory reason for its employment action. *Id.*; *Hernandez v. Metro. Transit Auth. of Harris Cty.*, 673 F. App'x 414, 417 (5th Cir. 2016). If the employer states a legitimate reason for its action, the inference of discrimination disappears, and the burden shifts back to the plaintiff to present evidence that the employer's proffered reason is merely pretextual. *Id.* "In contrast to the minimal burden that a plaintiff bears when establishing his prima facie case, a plaintiff must produce 'substantial evidence of pretext.'" *Id.* at 419 (quoting *Auguster v. Vermilion Par. Sch. Bd.*, 249 F.3d 400, 402–03 (5th Cir. 2001)). The plaintiff always bears the ultimate burden to prove discrimination. *Outley v. Luke & Assoc., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016).

To establish a prima facie case of discrimination in this failure to promote case, Dockery must show: (1) he was in a protected class; (2) he sought and was qualified for the position; (3) he suffered an adverse employment action; and (4) the employer promoted someone who is outside of his protected class or continued to seek applicants with plaintiff's qualifications. *McMullin v. Miss. Dep't of Pub. Safety*, 782 F.3d 251, 258 (5th Cir. 2015); *Autry v. Fort Bend Indep. Sch. Dist.*, 704 F.3d 344, 346-47 (5th Cir. 2013). To establish a prima facie case of retaliation, the plaintiff must show that: (1) he engaged in protected activity; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. *Davis*, 383 F.3d at 319 (5th Cir. 2004).

### III.    Analysis

#### A.    Racial Discrimination

For purposes of summary judgment only, TDCJ does not contest that Dockery meets all elements of a prima facie case of race discrimination.  Dkt. 45 at 16.  However, TDCJ contends it has a legitimate, non-discriminatory basis for its decision not to promote Dockery, and Dockery cannot meet his ultimate burden to show that its legitimate reason is mere pretext for discrimination.

##### 1.    TDCJ's legitimate, non-discriminatory basis for failure to promote

Lumpkin was the ultimate decision-maker for promotion decisions in MAL.  Dkt. 45-3 at 4; Dkt. 45-5 at 35.  TDCJ contends that Dockery was not promoted because Lumpkin instituted and adhered to a hiring policy that applies only to TDCJ retirees who seek reemployment and admittedly is more restrictive that TDCJ's agency-wide policy. TDCJ concedes that under ***TDCJ policy*** Dockery was eligible for rehire as Assistant Plant Manager at Beto as of April 1, 2015.  However, it is TDCJ's position that Dockery was not eligible for the position under ***Lumpkin's policy***, which prohibits a retiree from returning at ***any*** time to the same leadership position from which he retired.  Lumpkin contends he adopted this policy when he became MAL Division Director in 2013 in order to develop a "healthy leadership pipeline."  Dkt. 50-7 at 17-19; 50-8 at 17-18.  TDCJ points to the case of Mark Raley, a retiree who, in June 2016, applied for and was denied his pre-retirement position of Plant Manager at the Luther Unit Stainless Steel Factory.  TDCJ argues its decision not to rehire Raley supports the contention that Lumpkin developed his policy and applied it consistently and uniformly to all employees in his division.

### 2.  Dockery's Argument on Pretext

Because TDCJ articulated a non-discriminatory basis for the failure to promote Dockery, the burden shifts to Dockery to produce evidence of pretext.  Dockery argues that TDCJ's purportedly non-discriminatory explanation for its promotion decision is pretext because Lumpkin did not have authority to deviate from TDCJ policy as written in PD-84. As MAL Division Director, Lumpkin reported directly to the Executive Director of TDCJ. Dkt. 50-9 at 5.  Brad Livingston was Executive Director in 2013 until he retired in August 2016.  Livingston never authorized Lumpkin or anyone else to deviate from the one-year waiting period of PD-84.  Dkt. 50-16 at 8.  Livingston does not recall being told of Lumpkin's particular hiring practice.  *Id.*

Livingston was succeeded in August 2016 by Bryan Collier. By the time Collier became Executive Director, TDCJ had already denied Dockery the promotion to Assistant Plant Manager of Beto three times.  Collier recalls only one deviation from PD-84 which occurred in August 2019 when, at Lumpkin's request, retired truck drivers were rehired within one year of retirement because TDCJ was having difficulty finding applicants for those positions.  Dkt. 50-9 at 9-10.  Collier does not consider the policy Lumpkin has articulated to be a deviation from PD-84 and does not recall ever discussing Dockery's situation with Lumpkin.  Dkt. 45-3 at 13-15.

Dockery's insistence that Lumpkin's policy and decision not to promote Dockery was an unauthorized deviation from PD-84 is misguided.  PD-84 simply says a retiree returning to employment cannot be rehired into the same management position within one year from retirement.  PD-84 is silent as to whether a returning retiree can or must be

rehired for the same management position he retired from if more than one year has elapsed since retirement.  Dkt. 50-16 at 7.  Decisions to re-hire a retired employee after the one-year period specified in PD-84 has run are made by the Division Director.  Dkt. 50-9 at 4; 13.  Lumpkin's personal hiring policy is not an unauthorized deviation from or violation of PD-84.

However, the fact that Lumpkin's policy does not violate PD-84 does not resolve the issue of whether Lumpkin's alleged non-discriminatory reason for his decision not to promote Dockery is pretext.  Lumpkin's policy is not in writing, and according to TDCJ, Dockery is the first employee to whom Lumpkin applied the policy.  Dkt. 50-8 at 10-11; Dkt. 45-5 at 48 (Raley is the only employee other than Dockery to whom his policy has applied).  The policy was not known to the managers who took the time to interview Dockery and twice selected Dockery as the most qualified applicant for the Assistant Plant Manager position.  The March 8, 2016 letter incorrectly informing Dockery that the position he applied for had been filled did not mention Lumpkin's particular restrictive retiree rehiring policy.  Dkt. 50-39 at 2.  Lumpkin's superiors, Livingston and Collier, do not recall knowing of Lumpkin's policy prior to hearing of Dockery's case.  Lumpkin testified that he explained his decision-making rationale to Mullins in January 2016. Unfortunately, Mullins passed away in 2017 and is unavailable to corroborate Lumpkin's testimony.  In any event, Mullins clearly thought race was the real reason for Lumpkin's failure to promote Dockery because he filed an EEO complaint asserting as much.  Dkt. 50-34.

Alford testified that Lumpkin's hiring practice is the only reason she did not select Dockery for the Assistant Plant Manager position when he applied in 2016, or Raley for the Plant Manager position in Summer 2016. But she *did* select Dockery the first two times he applied in 2015 before apparently hearing about Lumpkin's policy that he says had been in effect since 2013. By the time Alford considered Raley's application and declined to select him for a position, Dockery had already filed an EEOC complaint. Furthermore, Robert Cousins, a long-time TDCJ employee and Plant Manager of another unit under Lumpkin, did not know about Lumpkin's policy at the time it allegedly formed the basis for several of the decisions not to promote Dockery to Assistant Plant Manager at Beto. Although he was a Plant Manager and involved in hiring decisions at his unit, Cousins had not heard about Lumpkin's policy until "after all this came about." Dkt. 50-31 at 3-5 (referencing Dockery's situation).

A Plaintiff may show pretext by showing that the employer's stated explanation is false or unworthy of credence. *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 143 (2000); *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 899 (5th Cir. 2002). A showing that the stated explanation is false or unworthy or credence taken together with plaintiff's prima facie case may support an inference of discrimination without further evidence of defendant's true motive. *Sandstad*, 309 F.3d at 897. Dockery has demonstrated a prima facie case, one which TDCJ did not contest on summary judgment. In addition, the Court cannot say that Dockery's evidence creates only a weak issue of fact regarding pretext and that abundant uncontroverted evidence indicates no discrimination occurred. *See Wilson v. Formosa Plastics Corp.*, 260 F.3d 622 (5th Cir. 2001) (summary

judgment may be appropriate in face of evidence discrediting the defendant's stated explanation "if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred . . ."). Only Lumpkin's own testimony establishes that he created a retiree rehire policy in 2013, when he first became Division Director at MAL, or at any other time before he denied Dockery's promotion to Assistant Plant Manager.

According to the summary judgment record, whether Lumpkin's policy was a legitimate, non-discriminatory reason for his refusal to promote Dockery or simply pretext is entirely dependent on Lumpkin's credibility. A reasonable jury could choose not to believe Lumpkin and could reasonably infer the decision not to promote Dockery was discriminatory. Therefore, the Court recommends that TDCJ's motion for summary judgment on Dockery's discriminatory failure to promote claims be denied.[4]

### B. Retaliation

TDCJ has moved for summary judgment on Dockery's retaliation claims, arguing he cannot meet his burden to show a prima facie case. TDCJ does not dispute that Dockery engaged in protected activity in March 2016, by filing an internal complaint of discrimination, and in May 2016, by filing a formal complaint of discrimination with the EEOC. Instead, TDCJ argues Dockery cannot demonstrate a prima facie case of retaliation

---

[4] The failure to promote Dockery based on the June 19, 2015 posting cannot stand alone as a discrimination claim. TDCJ has presented evidence that the first job posting was canceled because of the reclassification of the position, *see* Dkt. 45-50, and Dockery has no evidence to refute that evidence. Dkt. 50-3 at 11. There is nothing in the record linking the cancelation of the June 2015 job posting to Lumpkin's alleged discrimination. However, the final decision on each Assistant Plant Manager job posting after June 19, 2015 stands or falls with the fact issue regarding the truth or credibility of TDCJ's articulated non-discriminatory explanation, *i.e.,* Lumpkin's hiring practice, and Dockery should be permitted to go to trial on each.

because he has failed to allege an adverse employment action based on the allegedly retaliatory conduct by Graham. TDCJ further argues that Dockery cannot show a causal connection between his protected activity and Graham's actions. As discussed in the sections below, the Court agrees on both counts.

However, TDCJ's motion does not address Dockery's retaliation claim based on TDCJ's failure to promote him after he filed a discrimination complaint. In its Reply, TDCJ contends that Dockery did not plead such a claim and did not identify failure to promote in response to an interrogatory request asking him to identify all alleged acts of retaliation. Dkt. 53 at 5; Dkt. 54 at 2 (objecting to Dockery's statement in his affidavit that "I believe Mr. Lumpkin discriminated and retaliated against me when he approved Mr. Graham as the Assistant Plant manager," on grounds that it is an attempt by Dockery to "manufacture[] a new claim of retaliation."). TDCJ misrepresents the record.

In his Amended Complaint Dockery alleges: "After complaining to management of racially motivated maltreatment, Plaintiff was subsequently and repeatedly harangued, ignored, disciplined, ***denied advancement***, and bullied." Dkt. 20, at 8 ¶ 45 (emphasis added). In response to TDCJ's Interrogatory 3, asking him to identify each incident of retaliation, Dockery stated: "I have since been denied the Assistant Plant Manager position during its vacancies." Based on this record, the Court concludes Dockery did plead a retaliation claim based on TDCJ's failure to promote him after he participated in the protected activity of filing a discrimination complaint. Specifically, Dockery's retaliation claim is based on the decisions regarding the Assistant Plant Manager postings in April

2016 and May 2018. TDCJ did not move for summary judgment on those claims and therefore they remain in the case.

### 1. Adverse employment action

Courts employ a broader definition of "adverse employment action" in the retaliation context than in the discrimination context. *See Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945–46 (5th Cir. 2015) (recognizing that adverse employment actions for retaliation claims are not limited to the workplace, and the standard is less demanding than an ultimate employment decision). An adverse employment action in the retaliation context is one that is "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* at 945 (alteration in original) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The employment action is judged by a "reasonable employee" standard, *i.e.*, whether alleged conduct would dissuade "a reasonable employee" from engaging in protected activity, and therefore the determination of whether an action constitutes an adverse employment action in the retaliation context often depends upon the particular circumstances of each case. *Id.* at 945–46. *See Aryain v. Wal-Mart Stores Texas LP*, 534 F.3d 473, 485 (5th Cir. 2008) ("[A]llegations [of poor treatment by managers] do not rise to the level of material adversity. Instead they fall into the category of 'petty slights, minor annoyances, and simple lack of good manners' that employees regularly encounter in the workplace, and which the Supreme Court has recognized are not actionable retaliatory conduct." (citations omitted)); *cf. Brooks v. Houston Indep. Sch. Dist.*, 86 F.

Supp. 3d 577, 587 (S.D. Tex. 2015) (disciplinary write-up that contributed to probation, suspension, and transfer could be adverse employment action).

In response to TDCJ's motion for summary judgment, Dockery argues that oral and written disciplinary actions taken against him by Graham were retaliatory.[5]   Dockery contends that Graham mentioned his "lawsuit"[6] the first time they met and treated him poorly because of his discrimination complaint.  Dkt. 50-3 at 9-15 (describing the incidents he considers retaliatory).   For example, Dockery testified that Graham allegedly called Dockery a "big, bad wolf," and confirmed that he had taken some shots at Dockery but could not bring him down.  *Id.* at 14.   According to Dockery, Graham once wrote up a "contact log" unjustly criticizing Dockery for violating policy while supervising inmates in the shower area.  *Id.* at 11.   Also, according to Dockery, Graham retaliated by calling Alford to complain that Dockery had not followed instructions.  *Id.* at 13.

Dockery was not disciplined by TDCJ for any of the incidents he claims were retaliatory.  Dkt. 50-3 at 11, 18-19; Dkt. 45-1 at 21.   Dockery never suffered a change in assignments, pay, or benefits as a result of any of Graham's actions.  *Id.*; 45-8.   Dockery testified that management was supportive of him. Dkt. 50-3 at 11 (describing a meeting with Wardens to discuss Contact Log incident); 13-14 (acknowledging he was never disciplined and stating Alford told Dockery that Graham was jealous of Dockery's job skills).  The conduct alleged by Dockery to be retaliatory is not conduct that would dissuade

---

[5] Dockery expressly and voluntarily abandons any retaliation claim based on "the snake incident, minimization of his work roles, and scrutinizing his every move."  Dkt. 50 at 34.
[6] Assuming the truth of Dockery's testimony, Graham apparently mistakenly considered Dockery's EEOC complaint to be a lawsuit, although Dockery did not file this action until 2018.

a reasonable employee from reporting race discrimination. Graham's conduct essentially amounts to non-actionable "petty slights." *Aryain*, 534 F.3d at 485. Because Dockery has failed to demonstrate the necessary adverse employment action required to make a prima facie case of retaliation, TDCJ is entitled to summary judgment on his retaliation claims arising from Graham's conduct.

### 2. "But for" causation

Dockery's retaliation claim also fails because he cannot satisfy his ultimate burden, beyond a prima facie case, to show his protected activity was the "but for" cause of Graham's conduct. *Noel v. Shell Oil Co.*, 261 F. Supp. 3d 752, 771 (S.D. Tex. 2017), *report and recommendation adopted*, No. CV H-15-1087, 2017 WL 4082314 (S.D. Tex. Sept. 13, 2017) (temporal proximity of protected activity and retaliatory conduct may establish causal connection for purposes of prima-facie case, but it is not enough to establish causal connection at pretext stage). At the pretext stage of the analysis, a plaintiff must show that "but for" his protected conduct, the adverse employment action would not have occurred. *Strong v. Univ. Healthcare Sys.*, *L.L.C.*, 482 F.3d 802, 806 (5th Cir. 2007) ("The proper standard of proof ... [for] a Title VII retaliation claim is that the adverse employment action ... *would not have occurred 'but for' [the] protected conduct.*" (quoting *Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (emphasis in original)); *Rodriguez v. Brownsville Indep. Sch. Dist.*, 739 F. App'x 227, 231 (5th Cir. 2018), as revised (Aug. 3, 2018) ("An employee establishes pretext by showing that the adverse action would not have occurred but for the employer's retaliatory reason for the action. In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the

question of whether the employer would not have taken the action 'but for' the protected activity." (internal citations omitted)).

Graham's knowledge of Dockery's discrimination complaints, without more, does not demonstrate Graham's retaliatory conduct would not have occurred but for Dockery's protected activity. *Standley v. Rogers*, 202 F. Supp. 3d 655, 670 (W.D. Tex. 2016) ("[Supervisor's] knowledge alone does not establish a causal link."), *aff'd*, 680 F. App'x 326 (5th Cir. 2017) ("The district court properly determined that Standley's subjective belief and speculation about the reasons for the NSA's adverse employment actions did not create a genuine issue of material fact as to but-for causation."). Graham recalls only one incident when he "notated" that Dockery needed to improve his work performance. Dkt. 45-8 at 1. He did so because he observed that Dockery was not following proper procedure with offenders in the shower area and it was his job as a supervisor to advise Dockery of work-related expectations. *Id.* Nothing in the record supports an inference that but-for Dockery's protected activity, Graham would not have reprimanded or mistreated Dockery. *Cf. Rhines v. Salinas Const. Techs., Ltd.*, No. CIV.A. C-11-262, 2012 WL 3249532, at *8–9 (S.D. Tex. Aug. 7, 2012) (a fact issue on but-for causation existed where plaintiff's lay-off occurred in close temporal proximity to his EEOC filing, no other employees were laid off at that time, plaintiff still needed to complete considerable work on a project, defendant previously provided the EEOC a false statement concerning plaintiff's racial harassment allegations, and his supervisor twice warned him about filing complaints of racial harassment).

## IV.    Conclusion and Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that Defendant TDCJ's motion for summary judgment (Dkt. 45) be **DENIED** as to Plaintiff Dockery's failure to promote discrimination claims and his retaliation claims based on the failure to promote him after he filed a discrimination complaint in March 2016.  The Court further **RECOMMENDS** that Dockery's retaliation claims based on Graham's alleged mistreatment be **GRANTED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on May 18, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge